IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA   )
                             )
                             )   CRIMINAL ACTION
v.                          )
                             )   NUMBER 1:13-cr-441-TCB-ECS
QADIR SHABAZZ,           )
                             )
        Defendant.      )

## **O R D E R**

This matter is before the Court on Defendant Qadir Shabazz's

objections [82] to three Reports and Recommendations  (each an "R&R")

[60, 72, 74] issued by the magistrate judge recommending that

Shabazz's motions to suppress evidence [33, 43, 47] be granted as to

evidence derived from the search of the properties located at 2715

Church Street, 2779 Church Street, 640 Valley Hill Road and 2945 Orr

Drive and the search of a 2000 Mercedes Benz and a 2008 Chevrolet

Avalanche and denied as to all other evidence, including certain

statements made by Shabazz while he was in custody.

## I.   Legal Standard of Review

A district judge has a duty to conduct a "careful and complete" review of a magistrate judge's R&R. *Williams v. Wainwright*, 681 F.2d 732, 732 (11th Cir. 1982) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 408 (5th Cir. 1982).[1] This review may take different forms, however, depending on whether there are objections to the R&R. The district judge must "make a de novo determination of those portions of the [R&R] to which objection is made." 28 U.S.C. § 636(b)(1)(C). In contrast, those portions of the R&R to which no objection is made need only be reviewed for clear error. *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006).[2]

---

[1] The Eleventh Circuit has adopted as binding precedent all Fifth Circuit decisions issued before October 1, 1981, as well as all decisions issued after that date by the Unit B panel of the former Fifth Circuit. *Stein v. Reynolds Sec., Inc.*, 667 F.2d 33, 34 (11th Cir. 1982); *see also United States v. Schultz*, 565 F.3d 1353, 1361 n.4 (11th Cir. 2009) (discussing the continuing validity of *Nettles*).

[2] *Macort* dealt only with the standard of review to be applied to a magistrate's factual findings, but the Supreme Court has held that there is no reason for the district court to apply a different standard to a magistrate's legal conclusions. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Thus, district courts in this circuit have routinely applied a clear-error standard to both. *See Tauber v. Barnhart*, 438 F. Supp. 2d 1366, 1373-74 (N.D. Ga. 2006) (collecting cases). This is to be contrasted with the standard of review on appeal, which distinguishes between the two. *See Monroe v. Thigpen*, 932 F.2d 1437, 1440 (11th Cir. 1991) (when a magistrate's findings of fact are adopted by the district court without objection, they are

"Parties filing objections must specifically identify those findings objected to. Frivolous, conclusive or general objections need not be considered by the district court." *Nettles*, 677 F.2d at 410 n.8. "This rule facilitates the opportunity for district judges to spend more time on matters actually contested and produces a result compatible with the purposes of the Magistrates Act." *Id.* at 410. The district judge also has discretion to decline to consider arguments that were not raised before the magistrate judge. *Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009). Indeed, a contrary rule "would effectively nullify the magistrate judge's consideration of the matter and would not help to relieve the workload of the district court." *Id.* (quoting *United States v. Howell*, 231 F.3d 615, 622 (9th Cir. 2000)).

After conducting a complete and careful review of an R&R, the district judge may accept, reject or modify the magistrate judge's findings and recommendations. 28 U.S.C. § 636(b)(1)(C); *Williams*, 681 F.2d at 732. The district judge may also receive further evidence or

---

reviewed on appeal under a plain-error standard, but questions of law remain subject to de novo review).

3

recommit the matter to the magistrate judge with instructions. 28

U.S.C. § 636(b)(1)(C).

## II. Analysis

The Court has conducted a careful, de novo review of the relevant

portions of the R&Rs and Shabazz's objections thereto. Having done so,

the Court finds that the magistrate judge's factual and legal conclusions

were correct.

### A. Shabazz's Statements in April 2012

Shabazz's objections to the R&Rs focus primarily on his motion to

suppress statements made by Shabazz to two Pennsylvania law

enforcement agents on April 25 and April 26, 2012. As Shabazz notes,

"the government cannot introduce a suspect's statement taken without

the presence of an attorney without first showing that the suspect made

a voluntary, knowing, and intelligent waiver of his right to counsel."

*Hart v. Attorney Gen. of Fla.*, 323 F.3d 884, 891 (11th Cir. 2003) (citing

*Miranda v. Arizona*, 384 U.S. 436, 475 (1966)). This means that "the

relinquishment of the right must have been voluntary in the sense that

it was the product of a free and deliberate choice rather than

4

intimidation, coercion, or deception," and "the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine,* 475 U.S. 412, 421 (1986). The government bears the burden of proving such a waiver by a preponderance of the evidence. *Hall v. Thomas,* 611 F.3d 1259, 1285 (11th Cir. 2010). Shabazz contends that the government has not met its burden of proving that he made a knowing, voluntary and intelligent waiver of his rights under *Miranda.*

In this case, the issue of whether Shabazz's statements must be suppressed turns on the factual question of whether agents Darren Fisher and Regis Kelly read Shabazz his *Miranda* rights before questioning him. At the suppression hearing before the magistrate judge, Shabazz testified that the agents never read him his *Miranda* rights or presented to him a piece of paper that explained his rights. Shabazz also testified that he told the agents he did not want to answer any questions without his attorney, but Shabazz indicated that he was not allowed to contact an attorney. In contrast, the two agents who interviewed Shabazz unequivocally testified that at the beginning of

each interview, they gave Shabazz an advice of rights form that explained his *Miranda* rights, which they asked Shabazz to read and sign, and that at the beginning of the first interview, agent Kelly read those rights to Shabazz word for word. According to the agents, on each occasion Shabazz indicated that he understood his rights and wanted to speak with them, but that he did not want to sign the advice of rights form. The agents also testified that Shabazz stated that he did not have an attorney at that time but that he had someone in mind that he would probably hire if he decided to hire one.

Neither agent Fisher nor agent Kelly could locate notes of the interviews, and the interview memoranda prepared by agent Fisher does not contain any mention of *Miranda* rights. At the suppression hearing, agent Fisher indicated that it was a mistake not to document the reading of *Miranda* rights in his memoranda.

After carefully considering the evidence, including the testimony of the agents and Shabazz, the magistrate judge found the testimony of agents Fisher and Kelly to be credible. In his objections to the R&Rs, Shabazz challenges that credibility determination, arguing that it is

incredible that two agents with decades of law enforcement experience would forget to memorialize their giving of *Miranda* rights in the interview memoranda and would fail to note on the rights form the interviewee's refusal to sign the form.[3] The Court disagrees with Shabazz's contentions. Although the Court's determination would certainly be easier if the agents had documented in their interview memoranda that they informed Shabazz of his *Miranda* rights and that Shabazz refused to sign the advice of rights form, there is no requirement that they do so. Agent Fisher testified that he inadvertently left this information out of the memoranda. [65] at 60. The Court does not find this explanation to be improbable or suspicious if agent Fisher's testimony is otherwise credible, and as explained below, the Court finds that it is.

---

[3] In his objections to the R&Rs, Shabazz indicates that the magistrate judge denied the motion to suppress statements "notwithstanding the testimony of the agents that is, at least in part, 'problematic.'" [82] at 1. The Court notes that it was not the agents' testimony that the magistrate judge referred to as "problematic"; rather it was the agents' failure to reference the giving of *Miranda* rights in their interview memoranda. But like magistrate judge, the Court does not consider this outcome-determinative for the reasons stated herein.

Agents Fisher and Kelly offered consistent, detailed testimony of

the events on April 25 and April 26, giving similar accounts of the

interviews on these dates. *See* [65] at 11-96. For example, both agents

indicated that on April 25, they began the interview by introducing

themselves to Shabazz; agent Kelly informed Shabazz of his rights and

gave Shabazz an advice of rights form; Shabazz indicated that he

understood his rights but did not want to sign the advice of rights form;

Shabazz was provided with a copy of the complaint; they interviewed

Shabazz; and the interview ended when Shabazz indicated that he was

tired and needed to think about some of their questions. Similarly, both

agents indicated that on April 26, agent Fisher presented the advice of

rights form to Shabazz; Shabazz again indicated that he would talk but

did not want to sign the form; Shabazz was given a copy of the

complaint and the arrest warrant affidavit, which he took time to read;

they interviewed Shabazz; and the interview concluded with Shabazz

indicating that he needed additional time to think.

In contrast to the detailed testimony of agents Fisher and Kelly,

Shabazz could not recall how the April 25th interview concluded and

8

could not even recall meeting with the agents twice. The Court also notes that Shabazz has a prior conviction for fraud, which further calls into question his credibility. In short, having reviewed the transcript of the suppression hearing regarding Shabazz's motion to suppress statements and having carefully considered the evidence, including the testimony of agent Fisher, agent Kelly and Shabazz, the Court finds that the testimony of agents Fisher and Kelly is credible, and the Court finds that Shabazz's testimony that the agents never informed him of his *Miranda* rights is not credible.

Having found the testimony of agents Fisher and Kelly to be credible, for the reasons set forth in the R&Rs, the Court finds that the government met its burden of establishing that Shabazz's statements during the interviews on April 25 and 26, 2012, were made following a "voluntary, knowing, and intelligent waiver of his *Miranda* rights." *Hall v. Thomas*, 611 F.3d 1259, 1285 (11th Cir. 2010).

### B. Suppression of Other Evidence

Shabazz does not include detailed objections to the denial of his motion to suppress other evidence, including evidence resulting from

9

the search of the properties located at 1677 Dorsey Avenue and 2864 Cheney Street. Instead, he merely asserts that the warrants for the search of these properties lacked probable cause because they were "based solely upon persons with an interest in the case as defendants, e.g. Dion McBride." [82] at 4. To the extent Shabazz actually raises a proper objection to the finding that the warrants were based on probable cause, the Court notes that the warrant affidavits were not based solely on the statements of Dion McBride. The affidavits also refer to evidence gathered from other sources such as transaction records, phone records, websites and surveillance. [50-1]. Additionally, the affidavits recite steps that investigators took to corroborate McBride's statements, including contacting a hotel where Shabazz stayed in 2010 and 2011. Finally, as explained in the relevant R&R, Shabazz has pointed to no evidence that undermines the veracity or reliability of the statements in the affidavits.

In addition to the issues discussed above, the Court has reviewed the remaining portions of the R&Rs and the other contentions raised by Shabazz in his motions to suppress and supplements thereto, and the

Court finds no clear error in the magistrate judge's findings with respect to these issues.

Accordingly, the Court adopts as its order each of the reports and recommendations [60, 72, 74]. The Court grants Shabazz's motion to suppress evidence derived from the search of the properties located at 2715 Church Street, 2779 Church Street, 640 Valley Hill Road and 2945 Orr Drive and the search of the 2000 Mercedes Benz and 2008 Chevrolet Avalanche, and the Court denies Shabazz's motions to suppress other evidence.

IT IS SO ORDERED this 3rd day of February, 2015.

_____
Timothy C. Batten, Sr.
United States District Judge